

**BRENDA D. FORMAN**
CLERK OF THE COURTS
browardclerk.org ≡ BROWARD COUNTY, FLORIDA



≡

# Case Detail - Public

 Print

---

**Brandnameswatches International LLC**     **Plaintiff vs. PNC Bank**
**Defendant**

---

**Broward County Case Number:** CACE17018714

**State Reporting Number:** 062017CA018714AXXXCE

**Court Type:** Civil Division - Circuit Court

**Case Type:** Contract and Indebtedness

**Incident Date:** N/A

**Filing Date:** 10/11/2017

**Court Location:** Central Courthouse

**Case Status:** Pending

**Magistrate Id / Name:** N/A

**Judge ID / Name:** 12 Gates, Michael L.

---

**– Party(ies)**             Total: 2

| Party Type | Party Name | ❷ Address | ❷ Attorneys / Address ★ Denotes Lead Attorney |
|---|---|---|---|

---

| Party Type | Party Name | ❷ Address | ❷ Attorneys / Address ★ Denotes Lead Attorney |
|---|---|---|---|
| Plaintiff | **Brandnameswatches International LLC** | | ★ Padula, Stephen J, ESQ. Retained Bar ID: 182362 Padula Bennardo Levine, LLP 3837 NW Boca Raton Blvd Suite 200 Boca Raton, FL 33431 |
| Defendant | **PNC Bank** | | |

---

### ➖ Disposition(s)                                                                Total: 0

There is no Disposition information available for this case.

---

### ➖ Event(s) & Document(s)                                                        Total: 6

| Date ⬍ | Description | Additional Text | View | Pages ⬍ |
|---|---|---|---|---|
| 10/18/2017 | **Affidavit of Service** | PNC Bank, N.A., 12th day of October, 2017 at 9:19 am | 📄 | 1 |
| 10/12/2017 | **Filing Fee** | Payor: STEPHEN J PADULA ; Userid: CTS-fg/t ; Receipt: 20171FA1A139271; ;<br><br>Amount: $401.00 | | |

| Date ⬍ | Description | Additional Text | View | Pages ⬍ |
|---|---|---|---|---|
| 10/12/2017 | **Summons Issued Fee** | Payor: STEPHEN J PADULA ; Userid: CTS-fg/t ; Receipt: 20171FA1A139271; : <br><br> Amount: $10.00 | | |
| 10/11/2017 | **Civil Cover Sheet** | | 📄 | 2 |
| 10/11/2017 | **Complaint (eFiled)** | | 📄 | 15 |
| 10/11/2017 | **eSummons Issuance** | PNC BANK | 📄 | 1 |

**+ Hearing(s)**  Total: 0

**+ Related Case(s)**  Total: 0

## Brenda D. Forman

### Clerk of Court

Broward County
17th Judicial Circuit

MORE ABOUT THE CLERK (/ABOUTUS/ABOUTTHEOFFICE#ABOUTTHECLERK)  >

## Connect with Us

COURTHOUSE LOCATIONS (/ABOUTUS/HOURSANDLOCATIONS#COURTHOUSELOCATIONS)  >

CONTACT US (/ABOUTUS/ABOUTTHEOFFICE#CONTACTUS)  >

DISCLAIMER AGREEMENT (/GENERALINFORMATION/MISCELLANEOUS#DISCLAIMERAGREEMENT)  >

CLERK DIRECTORY (/ABOUTUS/HOURSANDLOCATIONS#CLERKDIRECTORY)                          ⟩

# Accessibility & Support

ADA NOTICE (/GENERALINFORMATION/MISCELLANEOUS#ADA)                                  ♿

PRINT                                                                               🖨

FREQUENTLY ASKED QUESTIONS
(HTTPS://WWW.BROWARDCLERK.ORG//WEB2/CASESEARCH/FREQUENTQUESTIONS/)

GLOSSARY OF TERMS (HTTPS://WWW.BROWARDCLERK.ORG//WEB2/CASESEARCH/GLOSSARY/)         ⟫

# Main Courthouse Location

## 201 SE 6th Street

Fort Lauderdale
Florida, US 33301
Phone: (954) 831-6565

REQUEST PUBLIC RECORDS
(/GENERALINFORMATION/MISCELLANEOUS#PUBLICRECORDSCUSTODIAN) › *PURSUANT TO 119.12
(2), F.S.*

Under Florida law, email addresses are public records. If you do not want your email address released in
response to a public records request, do not send electronic mail to this entity.
Instead, contact this office by phone or in writing.
© 2017 - All rights reserved

IN THE CIRCUIT COURT OF THE 17TH
JUDICIAL CIRCUIT, IN AND FOR BROWARD
COUNTY, FLORIDA

CASE NO.

BRANDNAMESWATCHES INTERNATIONAL,
LLC,

     Plaintiff,

vs.

PNC BANK, NA,

     Defendant.

_____/

## SUMMONS

THE STATE OF PENNSYLVANIA:
To Each Sheriff/Certified Process Server of the State:

**YOU ARE COMMANDED** to serve this summons and a copy of the Complaint in this action on
Defendant:

     **By serving:**   **PNC BANK, NA**
                       249 Fifth Avenue
                       One PNC Plaza
                       Pittsburg, Pennsylvania 15222

Each Defendant is required to serve written defenses to the complaint or petition on: **STEPHEN
J. PADULA, ESQUIRE,** Plaintiff's attorney, whose address is **PADULA BENNARDO LEVINE, LLP,
3837 NW BOCA RATON BLVD., SUITE 200, BOCA RATON, FLORIDA 33431**, within **twenty (20)
days** after service of this summons on that Defendant, exclusive of the date of service, and to file the original
of the defenses with the Clerk of this Court either before service on Plaintiff's attorney or immediately
thereafter. If a Defendant fails to do so, a default will be entered against that Defendant for the relief
demanded in the complaint or petition.

     Dated this _____    OCT 12 2017

                       **BRENDA D. FORMAN**
                       As Clerk of the Court

                       By: _____

                       **BRENDA D. FORMAN**

IN THE CIRCUIT COURT OF THE 17TH
JUDICIAL CIRCUIT, IN AND FOR BROWARD
COUNTY, FLORIDA

CASE NO.

BRANDNAMESWATCHES INTERNATIONAL,
LLC,

      Plaintiff,

vs.

PNC BANK, NA,

      Defendant.

_____/

## COMPLAINT

Plaintiff, Brandnameswatches International, LLC ("Brandnames"), files this action against

Defendant, PNC Bank, NA ("PNC"), and states as follows:

### Parties, Jurisdiction, and Venue

1.    This is an action for damages in excess of $15,000.00, exclusive of costs, interests,

and attorney's fees.

2.    Plaintiff is a Florida limited liability company with its principal place of business

in Broward County, Florida.

3.    Defendant is a is a national banking association authorized to conduct business in

Broward County, Florida.

4.    Non-party Swiss Watch International, Inc. ("SWI") is a Delaware corporation with

its principal place of business, at all times material hereto, in Broward County, Florida.

5.    This Court has jurisdiction over this matter pursuant to Fla. Stat., § 26.012.

*Brandnameswatches International, LLC vs. PNC Bank, NA*
Complaint

6.      Venue is proper in this Court pursuant to Fla. Stat., § 47.011, because the cause of action accrued in Broward County, Florida.

## General Allegations

*Brandnames' Relationship with SWI*

7.      Brandnames is in the wholesale resale watch business.

8.      SWI is in the business of distributing/selling watches.

9.      On or about August 18, 2016, Brandnames and SWI entered into a consignment agreement whereby Brandnames agreed to provide SWI with certain watches on consignment (the "Consignment Agreement"). A copy of the Consignment Agreement is attached hereto as **Exhibit "A."**

10.     From October 26, 2015, through December 27, 2016, Brandnames delivered watches to SWI on consignment (the "Consigned Watches").

11.     Pursuant to the Consignment Agreement, not later than fifteen (15) days after the end of each month, SWI was required to submit to Brandnames a report detailing all sales of the Consigned Watches from the immediately preceding month. Then, Brandnames was required to issue an invoice (based on the report) to SWI, which shall be due and payable no later than sixty (60) days after the end of the month in which the sales were made.

12.     Furthermore, upon termination of the Consignment Agreement, SWI must either return all unsold Consigned Watches or SWI must purchase all or some of the unsold Consigned Watches.

13.     SWI breached the Consignment Agreement by failing to remit payment to Brandnames and/or failing to return certain Consigned Watches to Brandnames.

2

14. As a result, Brandnames initiated a lawsuit against SWI, and on July 20, 2017, a Final Judgment was entered in favor of Brandnames and against SWI for $185,704.71.

### *SWI's Relationship with PNC*

15. In or around 2005, SWI and PNC[1] entered into a financing arrangement whereby PNC agreed to loan money to SWI, and SWI agreed to repay said loan.

16. In furtherance of this financing arrangement, PNC became a secured creditor evidenced by a UCC-1 Financing Statement.

17. As set forth therein, PNC was a secured creditor over certain collateral owned by SWI.

18. By July 22, 2016, SWI was facing severe financial difficulties.

19. As a result, pursuant to a forbearance agreement with its lender(s), SWI was allowed by its lenders to remain operating while attempting to obtain additional financing.

20. On or about January 27, 2017, SWI filed a WARN (Worker Adjustment and Retraining Notification) notice to the Florida Department of Economic Opportunity stating that it could not obtain new financing; thus, was no longer able to remain in operations.

21. During this timeframe, PNC seized SWI's property; however, in doing so, wrongfully seized the Consigned Watches.

### *Notice to PNC*

22. On September 22, 2017, the undersigned sent PNC a draft of this Complaint and corroborating evidencing that the Consigned Watches belong to Brandnames (the "Demand Letter"). A copy of the Demand Letter is attached hereto as **Exhibit "B."**

---

[1] The original lender was RBC Centura Bank; however, PNC has subsequently acquired RBC Centura Bank.

3

Case 0:17-cv-62124-BB   Document 1-2   Entered on FLSD Docket 10/30/2017   Page 9 of 21

*Brandnameswatches International, LLC vs. PNC Bank, NA*
Complaint

23. As of today's date, PNC has either failed to respond to the demand or refused to return the Consigned Watches (or their equivalent value) to Brandnames.

24. All conditions precedent to this action have occurred, have been satisfied, or have been waived.

25. Brandnames has engaged the undersigned legal counsel to prosecute these claims and has agreed to pay the undersigned counsel a reasonable attorney's fee.

## Count I – Conversion

26. Brandnames incorporates paragraphs 1 through 25 above herein.

27. Brandnames is the owner of the Consigned Watches.

28. PNC completed the unauthorized act of taking the Consigned Watches, and not forwarding the same to Brandnames.

29. PNC's unauthorized act deprived Brandnames of the Consigned Watches on a permanent basis, or at least for an indefinite time.

30. The deprivation is inconsistent with PNC's ownership interest in the Consigned Watches.

31. Brandnames has demanded the return of the Consigned Watches (or there reasonably equivalent value if PNC no longer has them in their possession), but PNC has refused and/or ignored the demand.

4

*Brandnameswatches International, LLC vs. PNC Bank, NA*
Complaint

WHEREFORE, Brandnames respectfully requests that this Court enter a judgment in its

favor and against PNC for compensatory damages, taxable costs, pre- and post-judgment interest,

and such other and further relief as this Court deems just and proper.

Dated this 11th day of October, 2017.

Respectfully submitted,

**PADULA BENNARDO LEVINE, LLP**
Attorneys for Plaintiff
3837 NW Boca Raton Blvd., Suite 200
Boca Raton, Florida 33431
Telephone No. 561.544.8900
Facsimile No. 561.544.8999

By:    /s/ Stephen J. Padula
          STEPHEN J. PADULA
          Florida Bar No. 182362
          Email:  SJP@PBL-Law.com
          JOSHUA S. WIDLANSKY
          Florida Bar No. 45197
          Email:  JSW@PBL-Law.com



# EXHIBIT "A"

## CONSIGNMENT AGREEMENT

AGREEMENT made to be effective as of 8-18-16 , by and between Brandnameswatches Intl, LLC., a Florida corporation located at 101 South State Rd 7, Suite 205, Hollywood FL 33023 ("Vendor") and Swiss Watch international, Inc.   a Florida corporation with offices 3701 Flamingo Road, Suite 100, Miramar, FL 33027 ("Retailer").

## W I T N E S S E T H :

WHEREAS, Retailer utilizes finished fine jewelry including rings, pins, necklaces, bracelets, earrings, pendants, watches, etc. in the conduct of its business ("Consigned Merchandise"); and

WHEREAS, Vendor is willing to deliver the Consigned Merchandise to Retailer on consignment for sale by Retailer on terms and conditions set forth herein:

NOW, THEREFORE, in consideration of the premises and for other good and valuable consideration, the parties agree as follows:

### 1. Consigned Merchandise

All styles of Consigned Merchandise to be consigned to Retailer hereunder shall be jointly selected by the Vendor and Retailer. Retailer shall tag and identify Consigned Merchandise with a separate Retailer SKU number exclusively assigned to Consigned Merchandise delivered pursuant to the terms of this Agreement. The parties agree that the maximum amount of Consigned Merchandise to be consigned hereunder is One million ($1,000,000.00) Dollars.

### 2. Sales Efforts by Retailer

Retailer shall use its best efforts to sell the Consigned Merchandise and for this purpose it agrees to keep the Consigned Merchandise properly and prominently displayed in its stores until the "Termination Date" (as hereinafter defined).

### 3. Delivery

3.1 The date and place of delivery of the Consigned Merchandise ordered shall be on terms specified by Vendor in its confirmation of the initial order and of each subsequent replacement order.

3.2 Retailer shall promptly inspect all Consigned Merchandise upon receipt by Retailer and shall return to Vendor any defective Consigned Merchandise within seven (7) days of its receipt by Retailer. Retailer's failure to inspect the Consigned Merchandise or return any defective Consigned Merchandise within said period shall be deemed a waiver of any right of Retailer with respect to rejection for non-conformity of the Consigned Merchandise and defects in workmanship.

### 4. Prices

The price for each item of the Consigned Merchandise consigned under this Agreement shall be the Vendor's quoted price which shall be applicable during the calendar year.

5. Sales Reports and Invoices

Not later than fifteen (15) days after the end of each month, Retailer shall submit to Vendor a report detailing all sales of Consigned Merchandise in the immediately preceding month. On the basis of the report received, Vendor shall issue an invoice relating to the sales of consigned Merchandise made in the course of the month, which shall be due and payable no later than sixty (60) days after the end of the month in which the sales were made. Vendor reserves the right, upon seven (7) days prior written notice to Retailer, to examine such records of Retailer which deal solely with the sale of the Consigned Merchandise for verification of the monthly reports. Retailer agrees to keep separate books and records regarding the Consigned Merchandise and its sale thereof. The examination shall be at the expense of Vendor, and shall take place during normal business hours.

6. Representations of Retailer

6.1 Retailer hereby represents and warrants to Vendor that the execution, delivery and performance by Retailer of the terms and provisions of this Agreement have been authorized by all requisite corporate action and will not violate any provision of law, any order of any court or other agency of government, the corporate charter or by-laws of Retailer or any indenture, agreement or other instrument to which it is a party, or by which it is bound, or be in conflict with, result in a breach of, or constitute (with due notice or lapse of time or both) a default under, or result in the creation or imposition of any lien, charge or encumbrance of any nature whatsoever upon any property or assets of Retailer, including without limitation, the Consigned Merchandise, pursuant to any such indenture, agreement or other instrument.

6.2 Retailer hereby represents and warrants to Vendor that attached hereto as Schedule A is a true and complete list of all of Retailer's stores and business locations regardless of the name under which Retailer is conducting business at such store or location. Retailer agrees to promptly notify Vendor of any new retail stores and business locations so that Vendor may file appropriate documentation under Article 13 hereof.

7. Representations of Vendor

Vendor hereby represents to Retailer that Vendor either has good title to the Consigned Merchandise or has full power and authority to deliver the Consigned Merchandise to Retailer.

8. Return and Reconciliation

Following the date of termination of this Agreement, Retailer may return to Vendor all unsold Consigned Merchandise or Retailer shall purchase all or some of the Consigned Merchandise at its option in accordance with the terms of this Agreement. The Consigned Merchandise shall be returned in the original condition in which it was delivered to Retailer pursuant to this Agreement. Final reconciliation shall be done, upon receipt by Vendor of the actual quantity of Consigned Merchandise returned.

9. Title

9.1 Title to the Consigned Merchandise shall at all times remain in Vendor until fully paid for by Retailer. Upon receipt by Retailer of the Consigned Merchandise, Retailer shall bear the entire risk of loss, theft, damage or destruction from any cause whatsoever, Retailer

agrees to hold the Consigned Merchandise and proceeds thereof in trust for Vendor and to indemnify and hold Vendor harmless from and against any and all liabilities, damages, losses, costs, expenses, suits, claims, demands or judgments of any nature (including, without limitation, attorney's fees and expenses) arising from or connected with any loss, theft, damage or destruction of the Consigned Merchandise.

9.2 Retailer shall immediately inform Vendor in writing of any loss, theft, damage or destruction of any of the Consigned Merchandise. Should any of the Consigned Merchandise be lost because of an event of loss, theft, damage or destruction, Vendor shall include the purchase price of such Consigned Merchandise in its monthly invoice issued to Retailer pursuant to Section 5 above and Retailer shall pay the same according to said terms.

## 10. Taxes

Retailer shall promptly pay any and all sales, use or other taxes, duties or assessments imposed by any governmental authority in a particular jurisdiction with respect to the possession, consignment or delivery of the Consigned Merchandise hereunder.

## 11. Commingling

Retailer shall not use, modify, commingle or otherwise deal with the Consigned Merchandise or any part thereof except in the ordinary course of its business as now being conducted, and, unless such Consigned Merchandise is being returned to Vendor, in no event shall any of the Consigned Merchandise be removed from Retailer=s place of business or that of its designated stores prior to the payment of the purchase price for such Consigned Merchandise by the Retailer's customer.

## 12. Insurance

1

Following the delivery of Consigned Merchandise, Retailer shall insure the Consigned Merchandise for its full value for and against all risks of loss. Retailer shall be responsible to and shall reimburse the Vendor for all loss and expense to Vendor resulting from damage to or the theft or destruction of the Consigned Merchandise from any cause whatsoever, whether or not insured, from the time received by it until returned to Vendor. Retailer shall deliver to Vendor a certificate of insurance relating to the Consigned Merchandise naming Vendor a "loss Payee" thereunder. Retailer warrants that it will promptly pursue all remedies and payments in the event of a loss and will immediately notify Consignor of any loss.

## 13. Security Interest

Vendor shall have and retain a security interest in all Consigned Merchandise delivered hereunder and the proceeds thereof and all additions, substitutions, products and accessions thereto and thereof, which security interest shall continue until the Consigned Merchandise is returned to Vendor pursuant to Article 8 hereto, or the full purchase price for all of the Consigned Merchandise delivered hereunder and not returned to Vendor is paid to Vendor. The parties agree that this Agreement creates a true consignment and that all deliveries of Consigned Merchandise hereunder shall constitute true consignments of the Consigned Merchandise and not the purchase and sale of Merchandise by Retailer. Retailer agrees that Vendor may execute, file and/or record any notice, financing statement, continuation statement, instrument or document that Vendor may consider reasonably necessary or desirable to create, preserve, continue, effect

or validate the security interest granted hereunder, including, without limitation, the giving of any document to Vendor=s creditors. Retailer expressly authorizes Vendor to file one or more financing statements, continuation statements or other documents under the Uniform Commercial Code ("UCC") of any state or the Federal Bankruptcy Code, with or without Retailer=s signature, naming Retailer as debtor and Vendor (or its assignee) as secured party. Retailer agrees not to grant a security interest in or file a financing statement with respect to or in any way covering the Consigned Merchandise which names a party other than Vendor as secured party without Vendor's prior written consent

14. Events of Default

The following shall be considered Events of Default:

14.1 Retailer's failure to submit to Vendor a report detailing all sales of Consigned Merchandise within the time frame set forth in Paragraph 5 hereinabove.

14.2 Retailer's failure to adhere to the terms herein, including but not limited to, failure to make prompt payment of all amounts owed pursuant to this Agreement, and honor all warranties and covenants. This includes without limitation, the obligations of Retailer to make payments in strict accordance with the time limits set forth in Paragraph 5 hereinabove.

14.3 A material adverse change in Retailer's financial condition which Vendor, in its sole discretion, deems material using sound business judgment.

14.4 Liquidation, an assignment for the benefit of creditors, dissolution or the discontinuance of the operation of the business of Retailer for any reason.

14.5 Failure of Retailer to remove by payment or bond any lien or attachment against the Consigned Merchandise within thirty (30) days.

14.6 The occurrence of any substantial loss, theft or destruction or damage to Vendor=s Consigned Merchandise delivered hereunder which is not fully covered by insurance.

14.7 The sale, assignment, or other transfer of greater than fifty (50%) percent in the aggregate, of the share ownership of the Retailer or the sale or any other transfer of twenty (25%) percent or more in the aggregate of the assets of Retailer during the term of this Agreement.

15. Default Remedies

15.1 Upon default by Retailer, Vendor may declare all liabilities, indebtedness and obligations of Retailer to Vendor arising under this Agreement immediately due and payable, without presentment, demand, protest or notice of any kind, all of which are hereby expressly waived, anything contained herein to the contrary notwithstanding.

15.2 Upon default, Retailer shall within fifteen (15) days return to Vendor, at Retailer's expense, all Consigned Merchandise delivered hereunder in a form acceptable to Vendor, or make payment for such Consigned Merchandise to Vendor. In the event of Retailer's failure to make immediate return or payment, Vendor may proceed to enforce payment and exercise all rights and remedies it may have against Retailer as provided by the UCC as well as any other rights and remedies to which Vendor may be entitled in law or equity, all of which may be exercised singularly or concurrently. Retailer agrees to pay all fees and expenses, including

reasonable attorney's fees, incurred by Vendor in enforcing its rights, powers and remedies under this Agreement.

16. Outstanding Balance Retailer agrees that as of the date of this Agreement the outstanding balance of Consigned Merchandise delivered by Vendor to Retailer and not sold by Retailer is $ as (if left blank then zero) set forth in Schedule B attached hereto. Such Consigned Merchandise is now subject to all of the terms and conditions of this Agreement.

### 17. Term and Termination

17.1 This Agreement shall commence as of the date first written above and unless sooner terminated pursuant to this Article 17, shall continue thereafte until such time as Retailer has complied with Article 17.3 below or if extended by the parties in writing for an additional period as extended. Notwithstanding anything to the contrary in this Article 17 Vendor may terminate this Agreement at any time, upon forty five (45) days prior written notice to Retailer. The termination of this Agreement as provided for in this Article 17 is referred to as the Termination Date.

17.2 Upon the occurrence of any Event of Default pursuant to Article 14 herein, Vendor may immediately terminate this Agreement by sending Retailer written notice of termination.

17.3 Within thirty (30) days from the Termination Date Retailer shall either (i) return all or any portion of the Consigned Merchandise which remain unsold, (ii) for any Consigned Merchandise not returned, pay Vendor pursuant to Article 4 herein, or (iii) obtain the written consent of Vendor to continue to hold the Consigned Merchandise. All Consigned Merchandise returned to Vendor must not be defective and must be in saleable condition.

### 18. Modification

No modification, amendment, supplement, or waiver to this Agreement shall be binding unless in writing and signed by both parties.

### 19. Notices

19.1 All notices or other communications pursuant to this Agreement shall be in writing and shall be deemed valid and sufficient if delivered by personal service or overnight courier or if dispatched by certified mail, email, postage prepaid, in any post office, addressed as follows:

If to Vendor: Brandnameswatches Intl. LLC
101 South State Rd 7
Suite 205
Hollywood FL 33023

sales@brandnameswatch.com

If to Retailer: Swiss watch international, Inc.
3701 Flamingo Road
Suite 100
Miramar,FL 33027

iezekiel@theswigroup.com

19.2 A party hereto may change its address by notice to the other in the manner set forth above. Notices and other communications rendered as herein provided shall be in writing and be deemed to have been given on the day on which personally served or if sent by overnight express mail service or by certified or registered mail, return receipt requested, postage prepaid on the fifth (5th) day after being posted, or the date of actual receipt, whichever date is earlier.

### 20. Waiver

The waiver, express or implied, by any party of any right hereunder shall not constitute a waiver of any other right.

### 21. Assignment and Transferability

Retailer may not assign its rights or delegate its obligations hereunder without the prior consent of Vendor, and any such assignment or delegation, in the absence of such consent, shall be void and without effect. Vendor may assign this Agreement to any third party providing that such third party agrees to be bound by the terms and condition of this Agreement to the same extent as Vendor.

### 22. Enforcement

If any provision of this Agreement shall be finally determined by competent authority to be invalid or unenforceable in any jurisdiction such invalidity or unenforceability shall attach only to such provision and jurisdiction. Such provision shall be deemed severed to the extent of such invalidity or unenforceability and shall not affect or render invalid or unenforceable any other provision of this Agreement. Subject to such severance, this Agreement shall continue in force and effect in accordance with its other terms and conditions.

### 23. Entire Agreement

This Agreement supersedes all prior communications and understandings between the parties hereto with respect to the subject matter hereof and constitutes their sole and entire agreement with respect to the subject matter hereof.

### 24. Further Action

Retailer, agrees that, from time to time, it will execute and deliver any and all additional and supplemental agreements, documents, and instruments and do such other acts as required by Vendor in Vendor's judgment, to be necessary or desirable to carry out the intents and purposes of this Agreement and the consummation of the transactions contemplated thereby.

### 25. Headings

The headings herein are for convenience only and shall not control or affect the meaning or construction of any provision of this Agreement.

26. Jurisdiction and Governing Law

26.1 This Agreement shall be governed by and construed in accordance with the laws of the State of Florida.

26.2 Retailer hereby submits to the jurisdiction of the courts of the State of Florida and the United States District Court for Fort Lauderdale Florida , as well as to the jurisdiction of all courts from which an appeal may be taken from the aforesaid courts, for the purpose of any suit, action or other proceeding arising out of this Agreement, and expressly waives any and all objections it may have as to venue in any of such courts.

IN WITNESS WHEREOF, Vendor and Retailer have caused this Agreement to be executed by their duly authorized officers to be effective as of the day and year first above mentioned.

VENDOR:

BY:_____

TITLE:_____

RETAILER:

BY:____Keith Bradley_____

TITLE:____CEO_____



*EXHIBIT "B"*

# PADULA BENNARDO LEVINE

COLLABORATIVE LEGAL SOLUTIONS FOR TODAY'S BUSINESS NEEDS

September 22, 2017

**VIA FEDEX (7703 2742 6480)**

PNC Bank. NA
Attn: Legal Department
249 Fifth Avenue
One PNC Plaza
Pittsburg, Pennsylvania 15222

>   *Re:*   ***Property Taken from Swiss Watch International, Inc.***

Dear Sir or Madam:

This law firm represents Brandnameswatches International. LLC ("Brandnames") in connection with certain watches that it had provided to Swiss Watch International, Inc. ("SWI") on consignment. As evidence of the same, attached is the: (1) Consignment Agreement, dated August 18, 2016, entered into between Brandnames and SWI; and (2) a breakdown of the consigned watches at issue. After Brandnames provided SWI with the consigned watches, but before they were returned to Brandnames, it is understood that PNC Bank had seized the watches from SWI under the belief that the watches were owned by SWI. This, however, is not accurate as the consigned watches were never owned by SWI; rather, they were merely being held for the benefit of Brandnames pursuant to the Consignment Agreement.

Based on the foregoing, Brandnames is hereby demanding the return of the consigned watches, and/or their reasonably equivalent value, which is $182,810.89. A copy of the draft Complaint which Brandnames intends on filing if PNC fails to comply with this demand is attached hereto for your review. **Within fifteen (15) days of receipt of this correspondence, PNC must either: (1) return the consigned watches to Brandnames; or (2) tender $182,810.89 to Brandnames. Failure to do so will result in Brandnames suing PNC for conversion.**

No further extensions of time to reinstate will be provided to you. You should not rely on any previous forbearance. The failure to specifically refer to any particular legal remedy or cause of action against you is not an indication that Brandnames is waiving, and it does not intend to waive any remedy, and should not be relied on by you as such.

Regards,

STEPHEN J. PADULA
For the Firm

SJP/tjh
Enclosures

cc:   Brandnameswatches International. LLC (w/ enc.)

---

Filing # 63009809 E-Filed 10/18/2017 03:24:45 PM

## AFFIDAVIT OF SERVICE

State of Florida                    County of Broward                    17th Circuit Court

Case Number: CACE1701871412

Plaintiff:
BRANDNAMESWATCHES INTERNATIONAL, LLC
vs.
Defendant:
PNC BANK, N.A.

For: Stephen J. Padula
     Padula Bennardo Levine

Received by Rock Legal Services & Investigations Inc on the 12th day of October, 2017 at 9:19 am to be served on PNC Bank, N.A., 249 Fifth Avenue, One PNC Plaza, Pittsburgh, PA 15222. I, _JEFFERY A. KEARNEY_, being duly sworn, depose and say that on the _13ᵗʰ_ day of _OCTOBER_, 20_17_ at _1 : 45_ _pm_., executed service by delivering a true copy of the **Summons and Complaint** in accordance with state statutes in the manner marked below:

(x) CORPORATE SERVICE: By serving _EMILY SCHOENLEIN_ ____ as
_RECORDS CUSTODIAN_ _____ in compliance with Florida Statute 48.081 or
other state statute as applicable.

COMMENTS: _- EMILY SCHOENLEIN_ _____ _RECORDS CUSTODIAN_

_____

_____

Age _24_ Sex M/Ⓕ Race _WH_ ____ Height _5'6"_ Weight _120 lbs_ Hair _Blond_ ____ Glasses Y/Ⓝ

I certify that I have no interest in the above action, am of legal age and have proper authority in the jurisdiction in which this service was made.

State of _Pennsylvania_
County of _Allegheny_
Subscribed and Sworn to before me on the _13_ day
of _October_, _2017_ by the affiant who is ( )
personally known to me or ( ) produced appropriate
identification.

_____
NOTARY PUBLIC

_Dana M. Fcolar_ ____ Print name

PROCESS SERVER # _____
Appointed in accordance with State Statutes

Rock Legal Services & Investigations Inc
2048 Ponce De Leon Avenue
West Palm Beach, FL 33407
(561) 296-7574

Our Job Serial Number: 2017020161
Ref: Brandnameswatches v. PNC Bank

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Dana M. Fcolar, Notary Public
Penn Twp., Westmoreland County
My Commission Expires July 12, 2020
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

Copyright © 1992-2017 Database Services, Inc. - Process Server's Toolbox V7.2g